# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### Southern Division - Detroit

|  |  |
|---|---|
| LITTLE CAESAR ENTERPRISES, INC.,<br> a Michigan corporation,<br>BLUE LINE FOODSERVICE<br> DISTRIBUTION, INC.<br> a Michigan corporation, and<br>LC TRADEMARKS, INC.,<br> a Michigan corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>LITTLE CAESARS ASF<br>CORPORATION,<br> a Nevada corporation,<br>LITTLE CAESARS ASF, INC.,<br> a Utah corporation,<br>SOUTHERN UTAH PIZZA<br> SERVICE, INC.,<br> a Nevada corporation,<br>ROLLIE ALAN KNOX,<br> a Utah resident, and<br>BEVERLY S. KNOX,<br> a Utah resident,<br><br>        Defendants. | Case No. |

## COMPLAINT

This is an action for breach of contract, declaratory judgment, trademark and trade dress infringement, and unfair competition arising from the operation of Little Caesars franchises by Defendants.  Defendants have breached their Franchise Agreements, supply and equipment purchase agreements, and a Settlement Agreement with Plaintiffs by failing to pay all amounts due and owing to Little Caesar's affiliate.  Defendants have also defaulted under their Territory Reservation Agreements with Plaintiffs by virtue of their breach of their Franchise Agreements.  Accordingly, Plaintiffs have terminated Defendants' Franchise Agreements and Territory Reservation Agreements, and seek monetary, injunctive, declaratory, and other relief for the reasons set forth below.

## THE PARTIES

1.     Plaintiff Little Caesar Enterprises, Inc. is a Michigan corporation with its principal place of business at 2211 Woodward Avenue, Detroit, Michigan.  It is engaged in the business of franchising independent businesspersons to operate restaurants throughout the United States under the trade name "Little Caesars."  Its franchisees are licensed to use its trade names, service marks, and trademarks and to operate under the Little Caesar System, which involves the production, merchandising, and sale of pizza and related products utilizing special equipment, equipment layouts, interior and

exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.      Plaintiff LC Trademarks, Inc. is a Michigan corporation with its principal place of business at 2211 Woodward Avenue, Detroit, Michigan. LC Trademarks, Inc. is the owner of the trademark, service mark, and trade name "Little Caesars" and related marks.  It licenses these marks to Plaintiff Little Caesar Enterprises, Inc., which in turn licenses them to Little Caesars franchisees.

3.      Plaintiff Blue Line Foodservice Distribution, Inc. ("Blue Line") is a Michigan corporation with its principal place of business at 2211 Woodward Avenue, Detroit, Michigan.  Blue Line is a wholly owned subsidiary and an affiliate of Plaintiff Little Caesar Enterprises, Inc. and is a supplier of Little Caesar products, ingredients, equipment, supplies, and materials used and sold by Defendants' franchised Little Caesars restaurants. Unless otherwise specified, Plaintiffs Little Caesar Enterprises, Inc., LC Trademarks, Inc., and Blue Line are collectively referred to hereinafter as "Little Caesar."

4.      Upon information and belief, Defendant Little Caesars ASF Corporation is a Nevada corporation with its principal place of business located at 115 East 2580 South, St. George, Utah  84790.  It owned and

operated fourteen Little Caesars restaurants located in the Kansas City area pursuant to fourteen different Franchise Agreements with Plaintiff Little Caesar Enterprises, Inc.

5.      Upon information and belief, Defendant Little Caesars ASF, Inc. is a Utah corporation with its principal place of business located at 115 East 2580 South, St. George, Utah  84790.  It owned and operated five Little Caesars restaurants located in the Kansas City area pursuant to five different Franchise Agreements with Plaintiff Little Caesar Enterprises, Inc.

6.      Little Caesars ASF, Inc. also entered into Territory Reservation Agreements with Little Caesar Enterprises, Inc., dated September 14 and September 15, 2014 (the "TRAs"), pursuant to which it agreed to develop Little Caesars restaurants in accordance with the Development Schedules attached to the TRAs, in exchange for the exclusive right to develop Little Caesars franchises in the territories prescribed by the agreements.  Under the TRAs, Defendant Little Caesars ASF, Inc. agreed to comply with the Franchise Agreements between it and its affiliates and Plaintiff Little Caesar Enterprises, Inc.

7.      Upon information and belief, Defendant Southern Utah Pizza Service, Inc. is a Nevada corporation with its principal place of business located at 115 East 2580 South, St. George, Utah  84790.  It owned a Little

4

Caesars restaurant located in Topeka, Kansas pursuant to a Franchise Agreement with Plaintiff Little Caesar Enterprises, Inc.

8.     Defendant Rollie Alan Knox is a natural person and, upon information and belief, is a citizen and resident of the state of Utah.   Mr. Knox is an officer and shareholder of Defendants Little Caesars ASF Corporation, Little Caesars ASF, Inc. and Southern Utah Pizza Service, Inc., and personally guaranteed the obligations of those entities under the Franchise Agreements pursuant to multiple executed personal guarantees.

9.     Defendant Beverly S. Knox is a natural person and, upon information and belief, is a citizen and resident of the state of Utah.  Mrs. Knox is an officer and shareholder of Defendants Little Caesars ASF Corporation, Little Caesars ASF, Inc., Southern Utah Pizza Service, Inc. and personally guaranteed the obligations of those entities under the Franchise Agreements pursuant to multiple executed personal guarantees.

10.     Defendants and Little Caesar entered into a Settlement Agreement dated September 8, 2014 to resolve prior litigation between the parties.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116  & 1121; and 28 U.S.C. §§ 1331, 1332,

1338, & 1367(a).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

12.    This Court has *in personam* jurisdiction over Defendants because they conduct business in this district and the events giving rise to Plaintiffs' claims occurred in this district.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

14.    Venue is also proper pursuant to the forum selection clauses in Section 23.2 (or a related provision) of the Franchise Agreements between the parties and Paragraph 8.P of the Settlement Agreement between the parties, which permit Little Caesar to bring this action in this district, where its principal place of business is located.

## BACKGROUND FACTS

### Little Caesar

15.    Little Caesar Enterprises, Inc. is the franchisor of the Little Caesar System.

16.    LC Trademarks, Inc. owns numerous federal registrations for the mark Little Caesars and related marks.  Among those registrations are Registration Nos. 2036763, 2028607, 2259637, and others.  Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

17.     Little Caesar has the exclusive license to use and license others to use its marks and trade name and has used them at all times relevant to this action to identify its restaurants, and the pizza and other products associated with those restaurants.

18.     The trade dress of Little Caesars restaurants includes the signage, lettering style, color scheme, exterior appearance, floor plans, and decor (including, without limitation, menu boards, display racks, and servers' uniforms) that are featured at the restaurants operated by Little Caesar franchisees.

19.     The Little Caesars trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality, and is nonfunctional.

20.     Little Caesar's trademarks and the Little Caesars trade dress are utilized in interstate commerce.

**Rights and Obligations Under the Franchise Agreements**

21.     Under the Franchise Agreements, Defendants were granted the right to operate franchised Little Caesars restaurants in accordance with the terms of the Franchise Agreements.

22.     Among other obligations, Defendants are required to pay Little Caesar a continuing royalty fee based on the Gross Sales (as that term is

7

defined in Section 3.2 (or related provision) of the Franchise Agreement) of their restaurants.  (Franchise Agreement § 3.2 (or related provision).)  They are also required to pay an advertising fee.  (*Id.* §§ 3.3, 9.1 (or related provisions).)  And they are required to pay any applicable late fee and interest.  (*Id.* § 3.4 (or related provision).)

23.    Defendants are also required to purchase products, ingredients, equipment, supplies, and other materials used or sold by their franchised Little Caesars restaurants from Blue Line and to pay Blue Line directly for such purchases in accordance with Blue Line's then-current payment terms and conditions. (*Id.* §§ 5.4, 5.4.1 (or related provisions).)  And they are required to pay any applicable late fee and interest.  (*Id.* § 3.4 (or related provision).)

24.    It is a default of the Franchise Agreements to fail to pay the amounts due and owing to Little Caesar or its affiliates, including Blue Line. (*Id.* §§ 3.4, 5.4, 5.4.1, 13.2.11 (or related provisions).)  The failure to make a required payment to Little Caesar or its affiliates, including Blue Line, within ten (10) days after receiving notice from Little Caesar that any such payment is overdue is grounds for termination of the Franchise Agreement. (*Id.* § 13.2.11 (or related provision).)

8

25.     The termination of one of Defendants' Franchise Agreements is grounds for termination of all of Defendants' Franchise Agreements. (*Id.* §§ 13.2.21, 13.4 (or related provisions).)

26.     Defendants were formerly licensed to use Little Caesar's trademarks, trade name, and trade dress in accordance with the terms of the Franchise Agreements.

27.     Defendants agreed that their right to use Little Caesar's proprietary marks is limited to uses authorized under the Franchise Agreements, and that "any unauthorized use thereof shall constitute an infringement." (*Id.* § 7.2.5 (or related provision).)

28.     Defendants agreed that they would use Little Caesar's proprietary marks, including, but not limited to, its trade names, service marks, trademarks, logos, emblems, trade dress, and other indicia of origin, "only in the manner authorized and permitted by Little Caesar." (*Id.* § 7.2.1 (or related provision).)

29.     Defendants further agreed that, during the term of the Franchise Agreements and after termination, they would not take any action "which may tend to derogate or jeopardize Little Caesar's interest" in its proprietary marks. (*Id.* § 7.3.2 (or related provision).)

30.    Defendants also covenanted not to do or perform any act injurious or prejudicial to the goodwill associated with Little Caesar's proprietary marks and the Little Caesar System.  (*Id.* § 15.2.1 (or related provision).)

31.    Pursuant to Section 14.8 (or related provision) of the Franchise Agreements, Defendants acknowledged that if the Franchise Agreements are terminated because of Defendants' default, the actual damages that Little Caesar would suffer for the loss of prospective fees and other amounts payable to Little Caesar would be difficult to ascertain.  Thus, Section 14.8 goes on to state that if the Franchise Agreement is terminated due to Defendants' default:

> … Franchisee shall promptly pay to Little Caesar a lump sum payment (as damages and not as a penalty) for breaching this Agreement and for Little Caesar's lost future revenue as a result of such breach in an amount equal to:  (a) the average royalty fees and advertising fees payable by Franchisee under Sections 3.2 and 9.1 above each month over the twelve (12) month period immediately preceding the date of termination (or, if the Restaurant has been open less than twelve (12) months, the average royalty fees and advertising fees payable by Franchisee each month the Restaurant was open); (b) multiplied by the lesser of (i) thirty-six (36) months, or (ii) the number of months then remaining in the then-current term of this Agreement.

> * * * *

32.    Defendants agreed to pay Little Caesar's attorneys' fees and costs incurred in enforcing the terms of the Franchise Agreements and

related to any failure by Defendants to comply with those Agreements. (*Id.* §§ 14.7, 15.4, 23.9 (or related provisions).)

## Post-Termination Obligations

33.     Defendants agreed that upon termination they would "immediately cease to operate" the restaurants and would not thereafter, directly or indirectly, "represent to the public or hold [themselves] out as a present or former franchisee of Little Caesar." (*Id.* § 14.1 (or related provision).)

34.     In addition, Defendants agreed that they would immediately and permanently cease to use, in any manner whatsoever, any trade secrets, confidential methods, procedures, and techniques associated with the Little Caesar System or Proprietary Marks. (*Id.* § 14.2 (or related provision).)

35.     They also agreed to return all confidential manuals and other confidential information of Little Caesar. (*Id.* § 14.9 (or related provision).)

36.     They also agreed to promptly pay all sums owed to Little Caesar. (*Id.* § 14.6 (or related provision).)

37.     Defendants agreed to take any actions necessary to cancel any assumed name or equivalent registration that contains Little Caesar's proprietary marks, and to furnish evidence of compliance within 30 days

after the Franchise Agreement's termination.   (*Id.* § 14.3 (or related provision).)

38.     Under the Franchise Agreements, Defendants agreed that upon termination Little Caesar would have the option to purchase any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of the restaurants.  In addition, Defendants agreed to assign to Little Caesar, at its request, any interests they have in any leases for the premises of the restaurants.  (*Id.* §§ 14.10, 14.4 (or related provisions).)

39.     Defendants also agreed to a reasonable post-termination covenant against competition, which states that they may not, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any person, persons, or legal entity "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products," for a continuous uninterrupted period of one (1) year following the termination of the Franchise Agreement (or a final court order regarding the same), in any Designated Market Area of any Little Caesar restaurant, and for a continuous uninterrupted period of two (2) years following the termination of the Franchise Agreement (or a final court order

regarding the same), in the Designated Market Area in which Defendants' former Little Caesar restaurant is located. (*Id.* § 15.3 (or related provision).) Defendants further agreed that breaching this and any other covenants in the Franchise Agreements would cause Little Caesar irreparable injury "for which no adequate remedy at law may be available, and agree[d] to pay all court costs and attorneys' fees incurred by Little Caesar in obtaining injunctive or other equitable legal relief . . . ." (*Id.* § 15.4.)

40.     As guarantors, Defendants Rollie Alan Knox and Beverly S. Knox have financially benefited from the economic activity of Little Caesars ASF Corporation, Little Caesars ASF, Inc., and Southern Utah Pizza Service, Inc. and are jointly and severally liable for the acts set forth herein.

**Prior Litigation And Settlement Agreement Between The Parties**

41.     In October 2013, Little Caesar initiated a lawsuit against Defendants in the United States District Court for the Eastern District of Michigan, *Little Caesar Enterprises, Inc.*, *et al. v. Little Caesars ASF Corporation, et al.*, 13-cv-14359-MAG-RSW, after terminating Defendants' Franchise Agreements based on, among other things, Defendants' repeated failure to make timely payment to Little Caesar and Blue Line.

42.     The parties settled that case pursuant to a Settlement Agreement dated September 8, 2014.

43.     Under the Settlement Agreement, Defendants Franchise Agreements were reinstated and Defendants agreed, among other things, that they would comply with all of the provisions of the Franchise Agreements and any other agreements between the parties as long as they continued to operate their franchised businesses.  (Settlement Agreement ¶ 8.B.)

44.     Defendants further agreed that the failure to cure any default under the Settlement Agreement within ten (10) days of receiving notice from Little Caesar of the default would constitute good cause for the termination of any and all Franchise Agreements between Defendants and Little Caesar.

### Defendants' Defaults Under the Franchise Agreements and Blue Line Terms and Conditions

45.     By letter dated March 29, 2017, titled Notice of Default, Little Caesar notified Defendants that they were in default of the Franchise Agreements and the Settlement Agreement because they had failed on multiple occasions to make timely payments to Little Caesar and Blue Line in an amount totaling approximately $125,000.00.

46.     By letter dated June 23, 2017, titled Notice of Default and Notice to Cure, Little Caesar notified Defendants that they were again in default of the Franchise Agreements and the Settlement Agreement because they had failed to make timely payments to Blue Line in an amount totaling

approximately $300,0000.00, for food and equipment deliveries made by Blue Line to Defendants' restaurants.

47.     The June 23, 2017 Notice further notified Defendants that they remained in default of two of their Franchise Agreements (Franchise Numbers 373-414 and 373-425) because they had failed to make any payment for equipment delivered by Blue Line to those two restaurants. The past due amount owed to Blue Line for the equipment totaled $222,585.80.

48.     As part of that Notice, Defendants were given ten (10) days to cure their defaults. Little Caesar also advised Defendants that the failure to cure the defaults could result in the termination of their Franchise Agreements and any other agreements between Little Caesar and Defendants.

49.     On June 28, 2017, counsel for Defendants sent Little Caesar a letter that confirmed Defendants' receipt of the June 23, 2017 Notice of Default and Notice to Cure and asserted that Defendants would cure their defaults related to these equipment purchases by July 5, 2017 by paying all monies owed.

50.     Defendants did not cure their defaults or pay all of the monies owed within the cure period, or on or before July 5, 2017. On July 10, 2017, Defendants sent Little Caesar a payment in the amount of $92,193.12, with

the representation that they would "let [Little Caesar] know" when they could pay the remaining balance owed to Blue Line.

51.    Defendants' acts constitute breaches of the Franchise Agreements and the Settlement Agreement that are good cause for immediate termination of the Franchise Agreements.  Accordingly, pursuant to a July 14, 2017 Notice of Franchise Agreement and Territory Reservation Agreement Termination, Little Caesar terminated Defendants' Franchise Agreements for the following reasons: (a) Defendants failed to cure their defaults of the Franchise Agreements for Franchise Numbers 373-414 and 373-425, in violation of Section 13.2.11 of those Agreements; (b) because Little Caesar had the right to terminate the Franchise Agreements for Franchise Numbers 373-414 and 373-425, it also had the right to terminate Defendants other Franchise Agreements in accordance with the cross-default and termination provisions in Sections 13.4 and 13.2.21 (or related provisions) of those Franchise Agreements; and (c) Defendants failure to cure their default under the Settlement Agreement by coming into compliance with the terms of the Franchise Agreements constituted good cause for the termination of all of the Franchise Agreements between Little Caesar and Defendants, pursuant to Paragraph 5 of the Settlement Agreement.

52.     Defendants' actions have caused and continue to cause monetary damage and irreparable harm to Little Caesar, including harm to its reputation and goodwill.

**Little Caesars ASF, Inc.'s Obligations and Defaults Under the TRAs**

53.     The TRAs required Defendant Little Caesars ASF, Inc. to develop Little Caesars restaurants in accordance with the Agreements' Development Schedules, in exchange for the exclusive right to develop Little Caesars franchises in the territories prescribed by the agreements.

54.     Under Section 10 of the TRAs, Defendant Little Caesars ASF, Inc. agreed that it would be in default of the TRAs if any other agreement between it, or its affiliates, and LCE was terminated and that if it was in default of the TRAS, Little Caesar would have the right to terminate the TRAs.

55.     Because Little Caesar terminated all of Defendants' Franchise Agreements for good cause for the reasons described above, Little Caesar also has the right to terminate the TRAs in accordance with the cross-default and termination provision in Section 10 of the TRAs.

56.     Accordingly, pursuant to the July 17, 2017 Notice of Franchise Agreement and Territory Reservation Agreement Termination, Little Caesar terminated the TRAs.

57.    Defendant Little Caesars ASF, Inc.'s exclusive right to develop Little Caesars franchises in the territories prescribed by the TRAs was terminated upon Little Caesar's termination of the TRAs.

## COUNT I
### Breach of Contract (Franchise Agreements and Blue Line Purchase Agreements) – Failure to Pay Amounts Owed

58.    The allegations of paragraphs 1 through 57 are hereby incorporated by reference.

59.    The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein, as well as the supply and equipment payment terms and conditions between Defendants and Blue Line.

60.    These breaches constitute good cause for terminating the Franchise Agreements.

61.    As a direct and proximate result of these actions, Little Caesar has suffered and is continuing to suffer monetary damages in an amount that has yet to be determined.

## COUNT II
### Declaratory Judgment (TRAs)

62.    The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63.    The conduct described in this Complaint constitutes material defaults of the contractual provisions of the TRAs cited herein.

64.    These defaults constitute good cause for terminating the TRAs, a decision that Defendants have thus far opposed.  As a result, an actual justiciable controversy exists between and among the parties to this action. Accordingly, Little Caesar seeks a judicial declaration by this Court (1) that Little Caesar terminated the TRAs for good cause; and (2) that Defendants' rights under the TRAs have been terminated.

## COUNT III
## Declaratory Judgment (Settlement Agreement)

65.    The allegations of paragraphs 1 through 64 are hereby incorporated by reference.

66.    The conduct described in this Complaint constitutes material defaults of the contractual provisions of the Settlement Agreement cited herein.

67.    These defaults constitute good cause for terminating the Franchise Agreements, a decision that Defendants have thus far opposed. As a result, an actual justiciable controversy exists between and among the parties to this action.  Accordingly, Little Caesar seeks a judicial declaration by this Court (1) that Defendants acts constitute material breaches of the

19

Settlement Agreement; and (2) these breaches constitute good cause for terminating the Franchise Agreements and TRAs.

**COUNT IV**
**Breach of Contract (Franchise Agreements) – Failure to Comply With**
**Post-Termination Obligations**

68.　　The allegations of paragraphs 1 through 67 are hereby incorporated by reference.

69.　　Defendants have failed to comply with the post-termination obligations set forth in the Franchise Agreements.

70.　　Defendants' failure to comply with the post-termination obligations set forth in the Franchise Agreements is causing irreparable harm and damage to Little Caesar.

71.　　Little Caesar has no adequate remedy at law to protect its substantial business and property rights as the damages from Defendants' failure to comply with the post-termination obligations are considerable and continuing, and thus not capable of ascertainment at this time.

72.　　As a direct and proximate result of Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT V
## Trademark Infringement

73.     The allegations of paragraphs 1 through 72 are hereby incorporated by reference.

74.     The use in commerce of Little Caesar's trademarks and trade name by Defendants outside the scope of the Franchise Agreements and TRAs and without Little Caesar's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Little Caesar.   Such unauthorized use of Little Caesar's trademarks and trade name infringes its exclusive rights in its trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

75.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

76.     As a direct and proximate result of Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT VI
## <u>Unfair Competition</u>

77.     The allegations of paragraphs 1 through 76 are hereby incorporated by reference.

78.     The use in commerce of Little Caesar's trademarks, trade name, and trade dress by Defendants outside the scope of the Franchise Agreements and TRAs and without the consent of Little Caesar is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such unauthorized use of Little Caesar's trademarks and trade name violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

79.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

80.     As a direct and proximate result of Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT VII
## Trade Dress Infringement

81.   The allegations of paragraphs 1 through 80 are hereby incorporated by reference.

82.   Defendants' restaurants are identified by signs, exterior appearance, packaging, containers, and other items on which the Little Caesar proprietary marks appear in the same distinctive style and color scheme as Little Caesar uses for the pizza restaurants operated by its licensees.

83.   Defendants' use of trade dress that is identical or confusingly similar to the Little Caesar trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' restaurants, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendants' restaurants with the Little Caesar restaurants operated by its licensees.  Such adoption of Little Caesar's trade dress violates Section 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

84.   Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

85.   As a result of Defendants' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is

23

continuing to incur monetary damages in an amount that has yet to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.      Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreements, Settlement Agreement, and TRAs, and constituted good cause for the termination of the Agreements and the TRAs;

B.      Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements and TRAs as of the effective date of Little Caesar's Notice of Franchise Agreement and Territory Reservation Agreement Termination,, or as otherwise provided by applicable law;

C.      Enter an order enjoining Defendants, and all those acting by, through, or in concert with them, by preliminary and permanent injunction, from using Little Caesar's trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Plaintiffs;

D.      Enter an injunctive order directing Defendants, and all those acting by, through, or in concert with them, to comply with all of their post-termination obligations as provided in the Franchise Agreements;

E.      Enter judgment in favor of Plaintiffs for the damages they have suffered as a result of Defendants' breaches of the Franchise Agreements, including, but not limited to, judgment against Defendants for liquidated damages as set forth in Sections 14.7 and 14.8 (or related provision) of the Franchise Agreements and/or lost future revenues arising from Defendants' premature termination of the Franchise Agreements;

F.      Enter judgment in favor of Plaintiffs for the damages they have suffered as a result of Defendants' breaches of the supply and equipment payment terms and conditions between Defendants and Blue Line;

G.      Award Plaintiffs judgment against Defendants for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

H.      Award Plaintiffs their costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreements and Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

25

I.      Award Plaintiffs such other relief as this Court may deem just

and proper.

Respectfully submitted,

/s/  Larry J. Saylor
Larry J. Saylor (P28165)
Kimberly A. Berger (P56165)
MILLER, CANFIELD, PADDOCK
    & STONE P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 496-7986
Facsimile:   (313) 496-8454
Saylor@Millercanfield.com
Berger@millercanfield.com

Robert L. Zisk (admitted in E.D. Mich.)
Stephen J. Vaughan (admitted in E.D. Mich.)
Justin L. Sallis
GRAY, PLANT, MOOTY, MOOTY
    & BENNETT, P.A.
The Watergate
600 New Hampshire Avenue, N.W., Suite 700
Washington, D.C.  20037
Telephone:  (202) 295-2200
Facsimile:   (202) 295-2250
Robert.zisk@gpmlaw.com
Eric.yaffe@gpmlaw.com
Justin.sallis@gpmlaw.com

*Attorneys for Plaintiffs*

Dated: July 17, 2017

29527807.1\088888-04726